IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBBY BROWN,<br>Individually and o/b/o all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>ADTALEM GLOBAL EDUCATION, INC.,<br>a Delaware Corporation, et al.,<br><br>      Defendants. | Case No. 19-00250-CV-W-ODS |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' motion to dismiss for failure to state a claim. Doc. #13. For the following reasons, Defendants' motion is granted in part and denied in part.

### I.  BACKGROUND

Plaintiff is a former student of Defendant DeVry University ("DeVry"), a for-profit university. At all times relevant to this matter, DeVry was owned and operated by Defendant Adtalem Global Education, Inc. ("Adtalem"). Plaintiff states he enrolled at DeVry because of Defendants' marketing campaigns, which allegedly were false and misleading, and included misrepresentations. He identifies two marketing campaigns.

First, Defendants claimed 90% of their students actively seeking employment had careers in their fields of study within six months of graduation ("90% Placement Claim"). Plaintiff contends the 90% Placement Claim included graduates who continued employment with jobs they had prior to attending DeVry, included graduates who were not employed in their chosen fields, and excluded graduates who were unsuccessful in obtaining jobs after graduation. Second, Defendants represented DeVry graduates obtained jobs with significantly higher incomes than graduates of other colleges or universities ("Higher Income Claim").

Plaintiff alleges he saw or heard Defendants' 90% Placement Claim and Higher Income Claim (collectively, "the Claims") in television and radio advertisements, in telephone calls with DeVry representatives, on DeVry's website, in brochures, and during in-person meetings in 2010. Based on the Claims made to him, Plaintiff enrolled at DeVry and began taking classes in June 2010 in Kansas City, Missouri.

In January 2016, the Federal Trade Commission ("FTC") filed a lawsuit against DeVry alleging the Claims were false, deceptive, unfair, misleading, unsubstantiated, and illegal. Doc. #1, at 8 n.6. At the same time, "DeVry received a Notice of Intent to Limit from the Department of Education ("DOE") Office of Federal Student Aid…, informing DeVry of the DOE's intention to impose certain limitations on DeVry because of its statements regarding the post-graduation employment outcomes of DVU students." *Id*. According to Plaintiff the DOE concluded "DeVry could not provide evidence to substantiate th[e] [90% Placement] claim." *Id.* In March 2016, the Department of Veterans Affairs ("VA"), in light of the FTC's lawsuit, suspended DeVry from participating in a program wherein it was identified as a school "doing a good job of serving former troops." *Id*. State attorneys general also launched investigations into DeVry. *Id*. Although DeVry denied the allegations against it, it stipulated to the entry of an order for permanent injunction and monetary judgment. *Fed. Trade Comm'n. v. DeVry Educ. Grp. Inc.*, No. 16-CV-579 (C.D. Cal. Dec. 15, 2016) (Doc. #97). Among other things, DeVry agreed to pay $49,400,000.00 to the FTC, $30,351,019.00 "in forgiveness of unpaid private student loans that DeVry issued directly to current or past students," and $20,248.981.00 "in forgiveness of debts from accounts receivable, relating to debts of" DeVry students. *Id*. at 10-13.

After learning of the FTC's allegations against DeVry, Plaintiff and three others filed a complaint against Defendants in the United States District Court for the Northern District of Illinois alleging claims under unfair competition, consumer fraud, and false advertising statutes, and asserting claims based on contract and tort theories of relief. *Robinson v. DeVry Educ. Grp., Inc.*, No. 16 CV 7447, 2018 WL 828050, at *1 (N.D. Ill. Feb. 12, 2018). The Northern District found Plaintiff, who resides in Missouri and took DeVry classes in Missouri, could not bring a claim under the Illinois statutes. *Id*. at *2, 4. Because his claims did "not fall within the scope of the statute[s]," the Northern

District dismissed Plaintiff's claims. *Id.* The Northern District did not evaluate the merits of Plaintiff's fraud-based claims. *Id.*

*Robinson* is one of three cases asserting similar claims against Defendants in which the Northern District has considered motions to dismiss. *See also Polly v. Adtalem Global Educ., Inc.*, No. 16 CV 9754, 2019 WL 587409 (N.D. Ill. Feb. 13, 2019); *Petrizzo v. DeVry Educ. Grp. Inc.*, No. 16 CV 9754, 2018 WL 827995 (N.D. Ill. Feb. 12, 2018). *Petrizzo* met the same demise as *Robinson* in that the Northern District found the plaintiffs failed to "allege facts sufficient to show that [they] suffered actual, measurable, non-speculative damages." 2018 WL 827995, at *5-6. In *Polly*, the Northern District concluded the plaintiffs sufficiently pleaded a cognizable theory of damages but dismissed the complaint because the plaintiffs failed to specifically plead their fraud claims. 2019 WL 587409, at *2-5.

On March 29, 2019, Plaintiff, individually and on behalf of others similarly situated, filed a lawsuit against Defendants in this Court alleging fraudulent misrepresentation, fraudulent concealment, violations of the Missouri Merchandising Practices Act ("MMPA"), negligence, breach of fiduciary duty, conversion, and unjust enrichment. Doc. #1.[1] Defendants move to dismiss Plaintiff's claims, arguing he fails to state a claim upon which relief may be granted. Doc. #13.

## II.     STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept the plaintiff's factual allegations as true "and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

---

[1] Count VIII of the Complaint is for "Declaratory Relief." Doc. #1, at 36-37. Because Count VIII seeks remedy related to Plaintiff's claims and does not present a separate cause of action, it is not discussed in this Order.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "[L]egal conclusions can provide the framework" for a claim, but the legal conclusions "must be supported by factual allegations." *Id.* When faced with "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. DISCUSSION

#### A. <u>Damages</u>

The parties agree Plaintiff's "damages cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case." *McLean v. Ponder*, 418 S.W.3d 482, 496 (Mo. Ct. App. 2013) (citation and internal quotations omitted); Doc. #14, at 15-17; Doc. #20, at 15-18. Defendants argue Plaintiff does not adequately allege a cognizable theory of damages because his damages are too speculative to support a claim.

Plaintiff maintains his alleged damages are not speculative and he has sufficiently alleged a cognizable theory of damages. In his Complaint, Plaintiff contends he paid DeVry more than $16,000 in tuition, plus interest, and paid for related educational products, including books, supplies, and instruction on DeVry's website. Doc. #1, ¶ 63. He alleges the "prices for [Defendants'] products and services were significantly higher than what he would have paid for other similar post-secondary educational programs, but he believed they were worth it based on the 90% Placement Claim and Higher Income Claim." *Id.* "Had he known these claims were in fact false, he

would have paid less for these products and services or would not have enrolled at all." *Id.* Plaintiff "suffered injury," including "monetary loss in connection with borrowing funds to enroll," "incurring student loan debt," and "paying education related costs" he would not have otherwise purchased "absent DeVry's false representations. *Id.* ¶¶ 83, 116; *see also* ¶¶ 89-91, 122, 135. Plaintiff claims he is "entitled to actual damages, including but not limited to the difference in value between the DeVry products and services as represented versus as delivered…." *Id.* ¶ 104. Finally, Plaintiff contends Defendants were "enjoined from making the 90% Placement Claim as part of their advertising" after the lawsuits filed by the regulatory bodies were resolved, and DeVry correspondingly lowered tuition by as much as twenty percent for certain undergraduate programs and began phasing out other programs. *Id.* ¶ 27.

Both parties discuss Plaintiffs' alleged damages collectively as fraud-based claims. For a fraud claim, "[t]he measure of damages…is the 'benefit of the bargain rule' which allows the defrauded party to recover the difference between the property's actual value and what its value would have been if it had been as represented." *Moore v. Mo.-Neb. Express, Inc.*, 892 S.W.2d 696, 705-06 (Mo. Ct. App. 1994) (citation omitted). But Plaintiff asserts claims other than fraud, and under those claims, his recoverable damages differ.

For an MMPA claim, a plaintiff must show "he suffered an ascertainable loss of money or property." *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014) (citing Mo. Rev. Stat. § 427.025.1). Compensatory and consequential damages are recoverable in MMPA claims, and "where the benefit of the bargain rule is inadequate, other measures of damages may be used." *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. banc 1999); *see also Anderson v. Bass Pro Outdoor World, LLC*, 355 F. Supp. 3d 830, 840-41 (W.D. Mo. 2018) (stating "costs incurred in reliance on the fraud may be recovered.") (citations omitted). For a conversion claim, the measure of damages "is the value of the property at the time and place of conversion." *Commerce Bank, N.A. v. Tifton Aluminum Co.*, 217 B.R. 798, 801 (W.D. Mo. 1997) (citation omitted). For a negligence claim, a plaintiff has "a right to recover actual damages" and may also recover "special damages" for the "natural, but not necessary, result of the wrongful act." *Sharp v. Robberson*, 495 S.W.2d 394, 399

(Mo. banc 1973); *Young v. Mercantile Tr. Co. Nat'l Ass'n*, 552 S.W.2d 247, 250 (Mo. Ct. App. 1977).

To support their positions, the parties rely on the Northern District's prior DeVry cases. Plaintiff relies on *Polly*, where the court noted DeVry's twenty percent tuition discount showed damages were "plausible." *Polly*, 2019 WL 587409, at *4. The Northern District found it was "reasonable to infer from the tuition decrease that DeVry's allegedly inflated employment-rate representations caused tuition price to be higher than it otherwise would have been, meaning it is plausible that plaintiffs suffered actual damage in some amount." *Id.* Defendants rely on *Robinson*, where the Northern District concluded an "allegation that [he] would not have purchased an education from DeVry but for the misrepresentations contains an implicit and too speculative notion of educational value based on employment prospects." 2018 WL 828050 at *1. The Northern District also found there was "no allegation that the quality of the education received was measurably deficient, other than by virtue of post-graduation employment prospects." *Id.*

Similar to *Polly*, Plaintiff's damages are not based on the "true value" of his degree or potentially "adverse employment outcomes." Instead, his damages are based, at least in part, on the difference in tuition he paid in reliance on the misrepresentation versus what he would have paid without it. This is a cognizable damages theory. *See Polly*, 2019 WL 587409, at *3 (finding, "at this stage, the tuition decrease lends plausibility to plaintiffs' individual allegations that they were damaged."); *see also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758-59 (W.D. Mo. 2015) (finding the plaintiff "need only allege the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss."). Plaintiff also sufficiently pleads facts demonstrating he suffered an ascertainable loss of property, he did not receive the benefit for which he bargained, and he incurred costs when relying on the alleged fraud. Whether Plaintiff can present evidence to establish the amount of his damages is for a later time and is not examined at the motion to dismiss stage. Based upon Plaintiff's allegations, which the Court must view as true and view in the light most favorable to Plaintiff, the Court finds Plaintiff alleges sufficient facts to state a cognizable theory of damages.

## B. Fraud-Based Claims

### (1) Particularity

Defendants move to dismiss all fraud-based claims, arguing Plaintiff fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) of the Federal Rules of Civil Procedure requires "the circumstances constituting fraud. . . shall be stated with particularity." Fed. R. Civ. P. 9(b). One of the "main purposes" of Rule 9(b) is "to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (citation omitted). The Eighth Circuit has held the requirements of Rule 9(b) must be interpreted "in harmony with the principles of notice pleading." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).

> The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the circumstances constituting fraud, . . . including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.

*Id.* (quotations and citations omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

The parties seem to agree Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and negligence claims must meet Rule 9(b)'s particularity requirement because they are based on alleged fraud. *Streambend Prop. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015) (citation omitted).[2]

---

[2] The parties discussed Plaintiff's unjust enrichment claim along with the fraud-based claims and separate therefrom. The Court addresses the unjust enrichment claim separately. *See infra*, section III(E). In addition, the Court notes there is some disagreement among the judges in this Court as to whether Rule 9(b) applies to MMPA claims. *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2014 WL 6685816, at *7 (W.D. Mo. Nov. 26, 2014) (citations omitted). The Missouri Court of Appeals concluded "a claim alleging violations of the MMPA does not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake." *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777 (Mo. Ct. App. 2008). The MMPA supplements the definition of

Defendants argue these claims should be dismissed because Plaintiff fails to sufficiently identify which misrepresentations were made to him. Plaintiff alleges that, in or around the second quarter of 2010, he spoke on the phone with Dale Masteas and Chris Dunlap. Doc. #1, ¶ 59. They told him the 90% Placement Claim and the Higher Income Claim (as defined *supra* and in the Complaint), and "assured him not to worry about the higher cost of the DeVry's education program because – as evidenced by the 90% Placement and Higher Income Claims – it was superior to an education from Centric and would be all covered by grants." *Id.* Plaintiff asserts that on or about May 21, 2010, he met with "Admissions Advisor Chris Dunlap" in person. *Id.* ¶ 60. During their meeting, Dunlap gave a computer presentation "that reiterated the 90% Placement and Higher Income Claims." *Id.* Plaintiff alleges that between May 2010 and October 2010, he "met in person with Dale Masteas and other DeVry representatives who repeated the 90% Placement Claim and Higher Income Claims through verbal representations and written brochures." *Id.* Plaintiff further alleges Dunlap and Masteas told him "DeVry graduates were in demand from large technology employers who hired DeVry's graduates and supported DeVry's student programs." *Id.* Plaintiff claims Dunlap told him "employers hired DeVry graduates before and above graduates from other schools." *Id.* According to Plaintiff, Masteas also told him that "although Defendants' tuition is considerably higher than other post-secondary institutions…it would be of greater value and therefore superior to any other education [Plaintiff] might be considering." *Id.* ¶ 61. Plaintiff alleges Masteas informed him that upon completing DeVry's two-year Network Systems Administration degree program, Plaintiff "could make at least $120,000 per year." *Id.*

      Plaintiff sufficiently alleges the content of the representations he heard, who made the representations, where and how the representations were made, and the approximate dates on which the representations were made. Plaintiff's allegations put Defendants on notice of the specific misconduct alleged against them. *Summerhill*, 637

---

common law fraud, eliminating the need to prove an intent to defraud or reliance." *Id.* at 777-78 (citation omitted). But the Court need not decide whether Rule 9(b) applies to Plaintiff's MMPA claim because Plaintiff's Complaint satisfies the heightened pleading standard.

8

F.3d at 880; *Abels*, 259 F.3d at 920.  Accordingly, the Court finds Plaintiff sufficiently alleges Defendants' misrepresentations with the requisite particularity.

### (2)     Falsity

Defendants move to dismiss all fraud-based claims, arguing Plaintiff has not sufficiently alleged falsity.  Defendants argue Plaintiff's "conclusory allegations" are based "entirely on 'information and belief,'" and are insufficient to meet Rule 9(b)'s pleading standard.  Doc. #14, at 13.  Plaintiff argues he sufficiently alleged facts showing Defendants' representations were false, particularly in light of the fact that the data and information establishing the falsity of the representations is exclusively in Defendants' control.

Although Defendants argue Plaintiff's allegation that Defendants' representations were false is based entirely on information and belief, the Court notes Plaintiff uses the phrase "information and belief" once in his Complaint.  In the introductory paragraph, Plaintiff informs the Court that his allegations are "based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters…."  Doc. #1, at 1.  Contrary to Defendants' argument, Plaintiff's allegations about the falsity of Defendants' representations are not stated with the caveat that they are based on "information and belief."

Plaintiff's allegations, which the Court must accept as true, contain sufficient facts showing the representations made by DeVry were false.  Plaintiff alleges:

> Defendants' representations are false and misleading, because, without limitation: (a) the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is in fact significantly and materially smaller than 90%; and (b) Defendants' own statistics showed that graduates of DeVry did not have any higher income than graduates from other schools and that such claim was false, misleading, deceptive and incomplete.

Doc. #1, ¶ 78.  Plaintiff also contends, "Defendants continued to conceal the defective nature of their product and services even after Class Members began to complain about, and report the problems with, Defendants' products and services."  *Id.* ¶ 88.  Moreover, Plaintiff claims:

9

> Defendants engaged in deceptive and unfair acts in connection with its marketing, promoting, advertising, and selling DeVry's products and services, including by representing that: (a) as a result of obtaining a DeVry degree, 90% of DeVry graduates from a specific year who were actively seeking employment landed or obtained new jobs in their field of study within six months of graduation; (b) after graduation the average or median earnings of DeVry graduates is higher than the average or median earnings of graduates from all other colleges and universities; and (c) DeVry's bachelor's degree graduates specifically earn up to 15% more than graduates from other colleges and universities. Each of these representations are false and/or misleading and constitute a deceptive act or practice in violation of the MMPA.

*Id.* ¶ 99. And Plaintiff asserts, "Defendants willfully and intentionally failed to disclose one or more important and material facts that were only known to them and that Plaintiff and the Class Members could not have discovered." *Id.*[3]

These facts are sufficient to plausibly allege how Defendants executed the alleged fraud. *See Lemery v. Duroso*, No. 4:09-CV-00167-JCH, 2009 WL 1176269, at *4 (E.D. Mo. Apr. 30, 2009). Plaintiff has made the most diligent pre-complaint inquiry within his power and stated enough facts to raise a reasonable expectation that discovery will reveal additional evidence of falsity. *See Pension Tr. Fund for Op. Eng'rs v. DeVry Educ. Grp., Inc.*, No. 16-CV-5198, 2017 WL 6039926, at *9 (N.D. Ill. Dec. 6, 2017) (citations omitted) (fraud allegations related to 90% Placement and Higher Income Claims met Rule 9(b)'s pleading requirements). Plaintiff's allegations not only show the factual basis of his claims but also provide Defendants with adequate notice as to the reasons for Plaintiff believing the representations are false. Accordingly, the Court finds Plaintiff sufficiently alleges falsity. Therefore, Defendants' motion to dismiss Plaintiff's fraud-based claims is denied.

### C. <u>Breach of Fiduciary Duty Claim</u>

Defendants argues Plaintiff fails to set forth sufficient facts to allege a breach of fiduciary duty. Defendants contend the relationship between a school and a student is a contractual one, not that of a fiduciary. Plaintiff argues DeVry affirmatively accepted

---

[3] In addition to the allegations the Court has mentioned, Plaintiff sets forth other allegations to demonstrate falsity. *See* Doc. #1, ¶¶ 76-79, 87-89, 99-100, 102.

10

fiduciary obligations and held itself out as a fiduciary to students. According to Plaintiff, DeVry stated in regulatory filings that it is obligated to act as a fiduciary for the funds it administers as part of financial aid programs. Defendants argue this admission of fiduciary obligation is not owed to the student but to the Department of Education.

To establish a claim for breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) causation, and (4) damage. *See Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention,* 918 S.W.2d 805, 810 (Mo. Ct. App. 1996). The mere existence of a contractual or business relationship does not create a fiduciary relationship or the presumption of such a relationship. *Chmieleski v. City Prods. Corp.,* 660 S.W.2d 275, 294 (Mo. Ct. App. 1983) (citing *Sewell v. Ladd,* 158 S.W .2d 752, 757 (Mo. Ct. App. 1942)). Missouri applies a five-factor test to determine whether there is a fiduciary relationship. *Id.*

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Id.*

Plaintiff alleges Defendants breached their fiduciary duties by failing to review, interpret, establish procedures for, and comply with regulations and the standard of care and diligence of a fiduciary in arranging, administering, and handling Plaintiff's student loans and financial assistance. Doc. #1, ¶¶ 120-122. Plaintiff's allegation that Defendants "owed [him]…a fiduciary duty" is merely a legal conclusion. *Id.* Pleading a conclusion is insufficient to survive a motion to dismiss. *See Twombly,* 550 U.S. at 555 (finding "factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted). Plaintiff does not plead sufficient facts to state a plausible claim for breach of fiduciary duty. Revealingly, Plaintiff fails to plead sufficient facts that would allow the Court to infer Plaintiff can plausibly meet the first element of a

claim for breach of fiduciary duty, *i.e.*, a fiduciary duty existed. Thus, Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim is granted.

### D. Conversion Claim

Defendants argue Plaintiff's conversion claim should be dismissed because he does not allege he involuntarily paid tuition to DeVry. Plaintiff argues Defendants' fraudulent conduct, which resulted in conversion of his loans, precludes a finding that he "voluntarily" gave them his funds.

"Conversion may be proved in one of three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; or (3) by a refusal to give up possession to the owner on demand." *Aldridge v. Francis*, 503 S.W.3d 314, 317 (Mo. Ct. App. 2016) (citation and internal quotations omitted). When a claim involves money, conversion is not a proper theory. *Gadberry v. Bird*, 191 S.W.3d 673, 675 (Mo. Ct. App. 2006) (citation omitted). "Money represented by a general or ordinary debt is not subject to a claim for conversion." *Id.* (citation omitted). Generally, "a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted." *Id.* (citation omitted). Nevertheless, "misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose." *Id.* (citations omitted).

Plaintiff alleges he was the lawful owner of student loan proceeds, and he paid those proceeds to Defendants. Doc. #1, ¶ 126. He claims Defendants "interfered with and subverted [his]…ownership interest in, or right to possess such student loan proceeds." *Id.* ¶ 127. Plaintiff contends he paid more than $16,000 for tuition. *Id.* ¶ 63. While Plaintiff alleges Defendants "misappropriated" his student loan proceeds, he does not allege Defendants "diverted" his student loan proceeds for "another, different purpose." Instead, his allegations demonstrate Defendants utilized the student loan proceeds for the intended purpose – to wit, tuition, albeit at an allegedly "significantly higher" price. *Id.* The Court finds Plaintiff has not sufficiently alleged a plausible claim

of conversion. Accordingly, Defendant's motion to dismiss Plaintiff's conversion claim is granted.

### E. Unjust Enrichment Claim

The extent of the parties' arguments regarding Plaintiff's unjust enrichment claim is as follows. Defendants argue Plaintiff's unjust enrichment claim fails because it is derivative of his other claims, which, as discussed *supra*, they believe fail. Plaintiff argues his unjust enrichment claim does not fail because his other claims survive. Based on these arguments, Defendants' motion fails because the Court concludes Plaintiff has sufficiently alleged his fraud-based claims. Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is denied.

### F. Claims Against Adtalem

Defendants also argue Plaintiff failed to allege any actionable conduct by Adtalem that rises beyond "threadbare recitals" and "conclusory statements." Doc. #14, at 14. Plaintiff alleges DeVry and Adtalem "jointly operated the for-profit school, DeVry University." Doc. #1, ¶¶ 1, 16. He also contends Adtalem "acting alone or in concert with others,…has advertised, marketed, distributed, or sold educational products and services to consumers and students." *Id.* ¶ 12. Additionally, he claims that "with respect to the acts and practices of [DeVry]" set forth in the Complaint, Adtalem "(a) dominated or controlled" DeVry's "acts and practices," (b) "knew and approved" of DeVry's acts and practices, and (c) "benefitted from" DeVry's acts and practices." *Id.* Plaintiff alleges "each and every Defendant was acting in concert with, and/or was an agent and/or employee of each and every Defendant," "each and every Defendants was acting within the course and scope of a common enterprise," each Defendant "was acting with the consent and authorization of" the other Defendant, and the "actions of each Defendant as alleged…were ratified and approved by every other Defendant and/or its officers or managing agents." *Id.* ¶ 14. Further, as explained in the Complaint's introductory paragraph, Plaintiff referred to DeVry and Adtalem collectively as "Defendants" in his Complaint. *Id.* at 1. The Complaint sets forth the alleged

misrepresentations "Defendants" made.  *Id.* ¶¶ 1, 4, 14, 24-26, 28-40, 42, 46, 61, 76-79, 85-88, 98-103, 107-13, 132-33.

Contrary to Defendants' argument, Plaintiff has not alleged "threadbare recitals" and "conclusory statements."  Plaintiff's allegations, which the Court must accept as true, contain sufficient factual matters to state plausible claims against Adtalem.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claims against Adtalem.

### IV.    CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss is granted with regard to Plaintiff's claims for breach of fiduciary duty and conversion and denied in all other respects.

IT IS SO ORDERED.

|  |  |
|---|---|
| DATE:  October 9, 2019 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, SENIOR JUDGE<br>UNITED STATES DISTRICT COURT |